PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* AVELINO GONZÁLEZ MENA, Defendant and Appellant.*

No. 3776. Argued June 26, 1929.—Decided June 25, 1930.

A. *Dones Padró* for appellant.   R. A. *Gómez* for appellee.

* NOTE.—On appeal to the U. S. Circuit Court of Appeals for the First Circuit, this decision was affirmed. See 51 F. (2d) 61.

MR. JUSTICE HUTCHISON delivered the opinion of the Court.

Section 5 of "An Act providing punishment for the adulteration of coffee, and for other purposes" Laws of 1928, page 166, makes the violation of section 1 of that act a misdemeanor. Section 1 provides that:

"It shall be illegal to adulterate or to mix coffee, in the grain, ground, or pulverized, with any other grain or substance with the intention of selling it, or to offer or have it for sale, and it shall be equally illegal for said coffee so adulterated or mixed, to be sold, offered or had for sale, or that it be transported or stored for the purpose of using it for human consumption, or to use it for industrial purposes, when intended for the preparation of food for human consumption."

Avelino González Mena was convicted of a violation of this section upon an information which charges that the said González Mena unlawfully, wilfully and maliciously had and offered for sale, for the purpose of being used for human consumption, coffee roasted and ground and adulterated with sugar.

The case was submitted upon an agreed statement of facts to the effect that defendant had and offered for sale, for the purpose specified in the information, coffee roasted and ground and adulterated with sugar; that this adulteration was not injurious to health, and that the coffee was put up in packages bearing a label which stated that the coffee was mixed with 4½ per cent of sugar.

The only defense was that the facts stated in the information and admitted by the district attorney in the agreed statement do not constitute an offense, for the reason that the law in question is unconstitutional because the Federal Food and Drugs Act permits harmless adulteration if the label shows the nature and percentage of foreign matter.

There is no assignment of error. The argument is an elaboration of the defense set up at the close of the trial. First it assumes that the law "providing punishment for

the adulteration of coffee, and for other purposes'' is a health measure; next comes the theory of conflict with the Federal Food and Drugs Act. The final contention is that the local law is discriminatory.

There is no evidence of an intention to limit the scope of the act to matters affecting public health. If the legislature had intended to prohibit adulteration by the addition of poisonous or deleterious matter only, there would have been some expression of the legislative will in that respect. In the absence of any mention of misbranding, there was no need for a definition of that term or for a proviso excluding compounds when labeled in a specified manner. If there had been any intention to create an exemption in favor of harmless or wholesome adulterants, subject to certain conditions as to labels or otherwise, that intention would appear on the face of the act. The purpose of the law was to protect the public against fraud and deceit by discouraging the admixture of cheaper or inferior grain or other substance, whether wholesome or unwholesome, which would increase the weight and impair the quality of coffee as such.

The National Food and Drugs Act does not forbid the enactment of any local law prohibiting the manufacture of, or traffic in, food or other things which do not come under the ban of the Federal Statute. There is, therefore, no conflict between that statute and the law now in consideration. Nor is the local law discriminatory, merely because it does not forbid the manufacture of, or traffic in, other articles which by express provision of the National Food and Drugs Act are excluded from the definition of the words ''adulterated'' and ''misbranded'' as therein used.

The judgment appealed from must be affirmed.

Mr. Justice Wolf and Mr. Justice Texidor dissented.

Mr. Justice Wolf, dissenting.

As I understand it, coffee prepared with sugar has been a product or preparation used and sold in Puerto Rico for a

long time. Whether this is true or not I can see no reason why a man in Puerto Rico has not the right to take two simple ingredients, products of the country, mix them and sell them at his convenience, provided always that the thing sold is plainly marked. The Legislature might prohibit any mixture or so called ''adulteration'' of coffee unless it was so plainly marked. When however without any apparent necessity therefor the Legislature prohibits the sale of a product so mixed, it has in my opinion exceeded the limits of the police power. The act of the Legislature thus transcending, as I think, the police power was unconstitutional and void. No one should be subjected to pains and penalty of the law for so innocent an act.

It is true that the appellant in his assignment of errors in this court did not raise the question now presented. Nevertheless it seemed apparent to me at the time of the discussion that the Legislature had no right to make the definition of a crime on which the information was founded. As the appellant, if I am right, had been guilty of no offense within the power of the Legislature, the question of constitutionality might be raised at any time and by the court itself. Others, too, might be prosecuted, perhaps, on the authority of the present case.

I have given the jurisprudence no considerable study, but it is partially indicated by 12 C. J. 929, 12 C. J. 934, note 43, 12 C. J. 774, section 203, 12 C. J. 786, notes 73, 74 and 75, and 12 C. J. 922. Similarly by our decision in *People* v. *Carril, post,* p. 266.